UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

                   Plaintiff,                           Case No.  1:18-CV-326

v.                                             HON. GORDON J. QUIST

BRYAN PUNTURO, et al.,

                   Defendants.

_____/

## OPINION AND ORDER REGARDING JURISDICTION

Plaintiff, Allstate Insurance Company, invoking this Court's diversity jurisdiction, filed its complaint in this case on March 22, 2018, seeking a declaratory judgment that the Business Owners Policy that Allstate issued to Bek Law, PLC, provides no coverage for a lawsuit pending in Michigan state court against Defendant Brace Kern—an employee and the principal of Bek Law, PLC— and others.  Kern filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), in which he argued that Allstate failed to allege facts showing that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).  In the alternative, Kern requested that the Court stay this case pending a decision by the Michigan Court of Appeals in the underlying case.[1]

Prompted by Kern's motion, the Court conducted its own examination of jurisdiction over this case and noted two issues: (1) whether Allstate properly alleged diversity of citizenship given

[1]The Michigan Court of Appeals affirmed the trial court's order denying Kern's motion for summary disposition and the plaintiff's cross-motion for summary disposition in the underlying case on October 16, 2018.  *See Punturo v. Kern*, Nos. 338727, 338728, 338732, 2018 WL 5276142 (Mich. Ct. App. Oct. 16, 2018).  The underlying case is currently pending before the Michigan Supreme Court on Kern's application for leave to appeal.

that Defendant B & A Holdings is a limited liability company; and (2)  whether this Court should exercise its discretion to entertain Allstate's request for declaratory relief.  Accordingly, on September 4, 2018, the Court directed the parties to address these issues.  (ECF No. 18.)  As directed by the September 4, 2018, Order, the parties have addressed the additional issues.

For the reasons that follow, the Court concludes that Allstate's allegations suffice to show that the Court has diversity jurisdiction.  The Court further concludes, after consideration of the applicable factors, that the instant case presents appropriate circumstances for the Court to exercise jurisdiction over Allstate's request for declaratory relief.

## I. BACKGROUND

On or about February 16, 2017, Bryan Punturo, Fawn Punturo, and B&A Holdings, LLC (collectively the Punturos), filed a complaint against Defendant Kern and Sauburi Boyer and Danielle Kort (formerly Danielle Boyer), alleging state-law claims for defamation, false light invasion of privacy, and tortious interference with business relations.  In a separate count, Fawn Punturo alleged a derivative claim for loss of consortium.  (ECF No. 1-1.)  B&A Holdings operates a hotel and conference facility on East Grand Traverse Bay known as the ParkShore Resort.  Bryan Punturo owns 50% of B&A Holdings.

The Punturos allege that Sauburi Boyer operated a parasailing business from ParkShore property from approximately 2003–2006.  In 2006, Boyer moved his parasailing business from ParkShore to a new location at another hotel.  From that time until the summer of 2013, Casey Punturo, Bryan Punturo's son, operated a parasailing business from ParkShore in competition with Boyer's business.  (*Id.* at PageID.11.)  According to the Punturos, in 2014, Boyer began attempting to limit competition in the parasailing business by, among other things, purchasing the assets of Casey Punturo's business and obtaining non-compete agreements with other potential competitors.

2

However, that same year, Boyer became financially overextended and defaulted on his purchase agreement with Casey Punturo. (*Id.* at PageID.12.) Punturo thereafter filed suit against Boyer to collect the amount due on the purchase agreement.

Instead of responding to Punturo's lawsuit, Boyer sought advice from Defendant Kern, a lawyer practicing in the Traverse City area. Upon Kern's advice, Boyer contacted the Grand Traverse County Prosecutor's Office and, subsequently, the Michigan Attorney General, accusing Punturo of violating Michigan's Antitrust Reform Act. In 2016, the Michigan Attorney General and the Michigan State Police raided ParkShore's offices and seized the hard drive from Punturo's computer. Eventually, the Michigan Attorney General filed a criminal case against Punturo charging him with extortion, instead of antitrust violations. In addition, earlier in 2016, Kern, representing Boyer, sued Punturo and ParkShore in state court alleging antitrust violations and other claims and seeking $781,500 in damages plus attorney's fees. The state court dismissed Boyer's suit against Punturo without Punturo or ParkShore filing a responsive pleading. (*Id.* at PageID.13.) The Grand Traverse County District Court ultimately dismissed the criminal extortion case against Punturo following the preliminary examination. (*Id.* at PageID.14.)

While the criminal extortion case and Boyer's civil antitrust case against Punturo were pending, Kern and the Boyers made numerous statements to the media regarding both cases, some of which expressly accused Punturo of violating state anti-trust laws by engaging in unfair competition and extortion. (*Id.* at PageID.14–17.) In February 2017, the Punturos' counsel sent Kern and Boyer demands for retraction, but Kern and Boyer failed to retract their statements. (*Id.* at PageID.22.)

After receipt of the Punturos' complaint, Kern tendered the defense to Allstate and his errors and omissions insurance carrier. Allstate agreed to defend Kern and Bek Law, PLC, subject to a

3

reservation rights.  (ECF No. 1 at PageID.3.)

Allstate filed the instant action against Kern, the Punturos, and B&A Holdings requesting a declaratory judgment that the Businessowners Policy it issued to Kern provides no coverage for the Punturos' state-court lawsuit.  In particular, Allstate alleges that although the Policy provides coverage for "'personal and advertising injury' caused by an offense arising out of your business," it excludes coverage for "personal and advertising injury" that is caused by the insured "with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or that arises "out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id.* at PageID.4.)  Allstate further alleges that the Policy contains an endorsement providing that its liability coverage "does not apply to 'personal and advertising injury.'" (*Id.*)

## II. DISCUSSION

### A.     Kern's Motion to Dismiss

Kern moves to dismiss Allstate's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that Allstate fails to allege facts demonstrating that the amount in controversy exceeds $75,000.  A Rule 12(b)(1) motion can be brought as a facial attack or a factual attack.  *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Kern's motion raises a facial attack, as it challenges the Court's subject matter jurisdiction based upon the sufficiency of the pleadings.  Thus, this Court must accept Allstate's allegations in its complaint as true and construe them in the light most favorable to Allstate.  *Id.*

Allstate relies on this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides for jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  In the Sixth Circuit,

when a plaintiff invokes diversity jurisdiction, the plaintiff's assertion of the amount in controversy will normally satisfy the jurisdictional requirement unless it is shown that the plaintiff made the claim in bad faith. *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008).   Bad faith may be shown where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1038).   "Under the legal certainty test, federal subject matter jurisdiction exists if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Schultz*, 512 F.3d at 756 (internal quotation marks omitted).  A demand is legally impossible where state law bars the type of damages the plaintiff seeks, *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000) (citing *Wood v. Stark Tri-Cnty. Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973)), or when the amount of the claim is limited by substantive law or contract. *See* 14AA Charles Allen Wright et al., *Federal Practice and Procedure* § 3702 (4th ed. Supp. 2016) (noting that the legal certainty principle "includes examining the forum state's rules regarding the applicable measure of damages and the availability of special and punitive damages, as well as a right to attorney's fees").

In the case of a declaratory judgment action, the amount in controversy is measured by "'the value of the object of the litigation.'" *Northrup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 2443 (1977)).  In an insurance coverage case, the amount in controversy is "'the value of the consequences which may result from the litigation.'" *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975)).

Allstate argues that, at a minimum, the Punturos' complaint alleges $100,000 in damages attributable to Kern because for each of the four counts the Punturos request damages in excess of

$25,000.  (ECF No. 19 at PageID.228.)  But, at least in this case, the amount-in-controversy requirement cannot be met simply by adding together the separate demands for each count because a common sense reading of the complaint suggests that the Punturos seek recovery under multiple theories based on a single set of facts. In other words, "[t]hat's double counting," *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998), or, at a minimum, there appears to be a fair amount of overlap of the damages sought for the various counts.  *See LA Laser Ctr., PC v. Viamedia, Inc.*, No. CV 12-04068, 2012 WL 1820920, at * 3 (C.D. Cal. May 18, 2012) ("Because Plaintiff's first and second claims are premised on mutually exclusive theories of recovery, Defendant's assertion that the two claims can be aggregated to meet the requisite amount in controversy is incorrect.  Defendant cannot rely on the same damages twice to support removal.") Regardless, the Court concludes that it is not legally certain that the amount-in-controversy requirement is not met.

Although the Punturos limited their claims to the state jurisdictional amount of $25,000, the jurisdictional threshold is met if state law permits the plaintiff to recover more than what the complaint requested.  *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 873 (6th Cir. 2000).  For instance, considering only the defamation claim, Michigan permits a plaintiff to recover not only economic damages, but also punitive damages.  *See Peiker Acustic, Inc. v. Kennedy*, No. 10-11378, 2010 WL 3419457, at *2 (E.D. Mich. Aug. 27, 2010).  In *Peiker Acustic*, for example, the defendant provided examples of Michigan verdicts or settlements in which punitive damages exceeded $75,000.  In addition, Allstate is on the hook for more than any damage award that the Punturos may recover in the underlying case.  Allstate must pay defense costs for defending Kern in the underlying case.  Thus, the value to Allstate of a declaratory judgment in this case would not only include damages that Allstate would have to pay under the Policy, but also attorney's fees, costs, and

6

expenses that it has and will incur in defending Kern.  *See Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 863–64 (E.D. Mich. 2014).

**B.      The Show Cause Order**

The Court's September 14, 2018, Order directed the parties to address diversity, in light of B&A Holdings' limited liability company status.  Allstate responds that it has conducted an extensive investigation but has been unable to ascertain from the publicly-available documents the identities of B&A Holdings' members.  Allstate contends that the available information suggests that B&A Holdings' members are all Michigan citizens, and Bryan Punturo and B&A Holdings—also named as Defendants herein—have not moved to dismiss on the basis of lack of diversity of citizenship.  Allstate requests that the Court allow its complaint to stand and permit it to conduct limited jurisdictional discovery or, alternatively, grant Allstate leave to amend its complaint to drop B&A Holdings from this case, as it is not an interested party for purposes of determining whether the Policy provides coverage in the underlying case.

At this juncture, the Court will not dismiss the case.  Instead, as the Punturos and B&A Holdings are parties to this case, the Court will order them to provide the identities and citizenships of B&A Holdings' members to the Court.

The second issue the Court identified is whether it should exercise jurisdiction over Allstate's complaint for declaratory relief.  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  The Act "is an enabling Act, which confers a discretion on the  courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S. Ct. 236, 239 (1952).  As the Supreme Court observed in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137 (1995), "[s]ince its inception, the

7

Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286, 115 S. Ct. at 2142.

In a number of decisions, the Sixth Circuit has addressed the considerations that may guide a district court in deciding whether to grant declaratory relief.  In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), the leading Sixth Circuit regarding when a declaratory ruling is appropriate, the court explained:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk*, 746 F.2d at 326 (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)). The court listed five factors that can determine whether a declaratory judgment will yield these results:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Id.*  These factors are formulated with three principles in mind:  "efficiency, fairness, and federalism." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  No particular weight is assigned to the factors, and how a court applies them "will depend on facts of the case." *Id.*  Although some Sixth Circuit decisions may be read to suggest that district courts should rarely,

if ever, entertain a declaratory judgment action seeking an insurance coverage opinion when the underlying action is pending in state court, *see Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d  807, 812 (6th Cir. 2004) (stating that insurance coverage diversity cases "'should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem" (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)), the court has "repeatedly held . . . that the Declaratory Judgment Act grants the district courts a discretion to entertain such cases . . . guided by certain general principles." *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447 (6th Cir. 1991).  At bottom, "[t]he essential question is whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Western World Ins.*, 773 F.3d at 759.  With this background in mind, the Court now considers each of the *Grand Trunk* factors in turn.

### 1.    Settlement of the Controversy

Sixth Circuit cases discussing this factor are not consistent.  As noted in *Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), there are two divergent lines of cases.  The first group concludes that a declaratory judgment can settle the insurance coverage dispute not addressed in state court, even though it will not help resolve the underlying state-court action. *Id.* at 555 (citing, among others, *West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006)).  The second group of cases concludes that  "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing, among others, *Travelers Indem. Co. v. Bowling Green Prof'l. Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (concluding that "[t]he district court's decision could not settle the controversy in the underlying state court litigation")).  The *Scottsdale*

9

court harmonized the two different views by noting that they arose out of different factual scenarios. The court explained that the first line of cases (favoring exercise of jurisdiction) applies where the declaratory judgment plaintiff is not a party to the state-court action, the state-court case does not involve the scope of insurance coverage or the obligation to defend, and the federal-court case involves a pure legal, not factual, issue. *Id.* at 556. In contrast, the second line of cases (disfavoring declaratory relief) applies when the federal case presents a fact-based question of state law that may be decided in the underlying state case. *Id.* at 555–56.

The Court concludes that this factor favors the exercise of jurisdiction because a declaratory ruling will settle the controversy as to whether the Policy provides coverage to Kern in the underlying case. The issue in this case is purely legal—one of contract interpretation—and not a fact-based question of state law. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). That is, the pertinent question is whether the Policy provides any coverage at all (without reference to whether the claims at issue in the underlying case are based on intentional conduct) by virtue of Endorsement BP 04 37 07 02, entitled "Exclusion-Personal and Advertising Injury." To the extent the endorsement excises all coverage for "personal and advertising injury," Allstate has no obligation to provide coverage. Although a declaratory judgment will not resolve the underlying state-court case, it will resolve the coverage issue between Allstate and Kern.

## 2.    Clarification of Legal Relations

This factor is "closely related to the first factor and is often considered in connection with it." *Scottsdale*, 513 F.3d at 557. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.*

In the instant case, the Court can resolve the coverage issue without delving into liability facts that be determined in the state-court case. Moreover, to the extent they are necessary (which

10

the Court deems them not to be), the Punturos and B&A Holdings are parties to this case.  Thus, this factor weighs in favor of exercising jurisdiction.

### 3.      Procedural Fencing

This factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale*, 513 F.3d at 558 (internal quotation marks omitted).  The Court finds no indication that Allstate is using the federal declaratory judgment remedy for procedural fencing or an improper purpose.  The fact that Allstate chose a federal, rather than a state, forum to hear its request for declaratory relief is not indicative of an improper motive or purpose. *See State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986) (noting that this factor does not weigh against exercising jurisdiction when the plaintiff has done nothing "more than properly choose the jurisdiction of federal rather than state court, a choice given by Congress").

This factor thus favors the exercise of jurisdiction.

### 4.      Friction Between State and Federal Courts

"[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Scottsdale*, 513 F.3d at 560 (internal quotation marks omitted).  However, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283, 115 S. Ct. at 2141 (quoting *Brilhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495, 62 S. Ct. 1173, 1176 (1942)).  The Sixth Circuit has identified three subfactors to guide district courts' analysis of whether entertaining a declaratory judgment action would increase friction between state and federal courts:

(1)     whether the underlying factual issues are important to an informed resolution of the case;

(2)     whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3)     whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp.*, 373 F.3d at 814–15 (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

None of the three subfactors suggests that this Court's exercise of jurisdiction would increase friction between state and federal courts.  As to the first and second subfactors, the underlying factual issues in the state-court case have no bearing on the insurance coverage issue in this case.  As noted above, the central issue here is whether the Policy provides coverage for "personal and advertising injury" at all.  The issue presents a straightforward application of ordinary contract principles completely divorced from any factual determination in the underlying case.  Last, there is no indication that the legal issues presented in the instant case are particularly tied to or dependent upon Michigan public policy.  The insurance provisions at issue in this case are common provisions that do not present previously undecided questions of state law or present important policy issues.  *See id.* at 815 (noting that the insurance coverage dispute would require the court to rule on unresolved questions of state law involving workers' compensation insurance issues as to which other state courts had reached different results).

Therefore, this factor favors the exercise of jurisdiction.

**5.     Alternative Remedy**

The inquiry here is whether there is an alternative remedy that is better or more effective.  Michigan does provide an alternative remedy—a state-court declaratory judgment action.  *See* Mich.

12

Ct. R. 2.605.  However, in applying this factor, courts must "consider[] . . . the whole package of options available to the federal declaratory plaintiff."  *Scottsdale*, 513 F.3d at 562.  Even though Allstate probably could not have been joined as a party in the underlying case, Allstate could have sought to have a state declaratory action assigned to the same judge who is presiding over the underlying case, which may have resulted in judicial efficiency.

Given these considerations, the Court concludes that this factor weighs in favor of abstaining, but not decisively so.

Considering the totality of the *Grand Trunk* factors, the Court concludes that exercise of jurisdiction over Allstate's request for declaratory relief is proper and will not interfere with the state-court case.[2]

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Allstate has properly alleged that the amount-in-controversy exceeds $75,000, exclusive of interest and costs.  Therefore, the Court will deny Kern's motion.  In addition, the Court concludes that the *Grand Trunk* factors weigh in favor of exercising jurisdiction over Allstate's request for declaratory relief.

Therefore,

**IT IS HEREBY ORDERED** that Defendant Kern's Motion for Dismissal for Lack of Jurisdiction (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that within **fourteen (14) days** of the date of this Order, the Punturos and B&A Holdings' counsel shall file with the Court a statement identifying the members of B&A Holdings and their citizenships.  Once the Court is satisfied that the parties are diverse, it

---

[2]As for Kern's request to stay this case, the Court concludes that a stay is unwarranted, particularly because the Michigan Court of Appeals affirmed the trial court's order.  Moreover, Allstate would be prejudiced by the stay because it continues to pay at least a portion of Kern's defense costs.

will issue an order directing Allstate to file a motion for summary judgment regarding insurance coverage.


Dated:  February 20, 2019                          /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE