UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

        Plaintiff,

v.

BRYAN PUNTURO, et al.,

        Defendants.
_____/

Case No. 1:18-CV-326

HON. GORDON J. QUIST

# OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Allstate Insurance Company, filed this diversity case against Bryan and Fawn Punturo, B & A Holdings, LLC d/b/a Parkshore Resort, and Brace Kern, seeking a declaratory judgment that Allstate does not owe Defendant Kern a duty to indemnify for a lawsuit pending in Michigan state court against Kern—an employee and the principal of Bek Law, PLC—and others. In particular, Allstate alleges that Business Owners Policy No. 648239769, which it issued to Bek Law, PLC, provides no coverage for the claims asserted in the underlying lawsuit.

Pursuant to the Court's April 1, 2019, Order (ECF No. 24), Allstate has filed a motion for summary judgment. (ECF No. 26.) Kern has filed a response, to which Allstate has replied. In addition, the Punturos and B & A Holdings have also responded, and Allstate has filed a reply. Accordingly, the matter is ready for decision.[1]

For the reasons that follow, the Court will grant Allstate's motion and issue the requested declaratory judgment.

---

[1] Although Allstate requested oral argument, the Court concludes that the briefs adequately address the issues and oral argument is unnecessary.

## I. BACKGROUND

### A. The Underlying Litigation

On or about February 16, 2017, Bryan Punturo, Fawn Punturo, and B&A Holdings, LLC (collectively the Punturos), filed a complaint against Defendant Kern and Sauburi Boyer and Danielle Kort (formerly Danielle Boyer), alleging state-law claims for defamation, false light invasion of privacy, and tortious interference with business relations. In a separate count, Fawn Punturo alleged a derivative claim for loss of consortium. (ECF No. 1-1.) B&A Holdings operates a hotel and conference facility on East Grand Traverse Bay known as the ParkShore Resort. Bryan Punturo owns 50% of B&A Holdings.

The Punturos allege that Sauburi Boyer operated a parasailing business from ParkShore property from approximately 2003–2006. In 2006, Boyer moved his parasailing business from ParkShore to a new location at another hotel. From that time until the summer of 2013, Casey Punturo, Bryan Punturo's son, operated a parasailing business from ParkShore in competition with Boyer's business. (*Id.* at PageID.11.) According to the Punturos, in 2014, Boyer began attempting to limit competition in the parasailing business by, among other things, purchasing the assets of Casey Punturo's business and obtaining non-compete agreements with other potential competitors. However, that same year, Boyer became financially overextended and defaulted on his purchase agreement with Casey Punturo and on his lease agreement with Bryan Punturo. (*Id.* at PageID.12.) Bryan Punturo thereafter filed suit against Boyer to collect the amount due on the lease.

Instead of responding to Bryan Punturo's lawsuit, Boyer sought advice from Defendant Kern, a lawyer practicing in the Traverse City area. Upon Kern's advice, Boyer contacted the Grand Traverse County Prosecutor's Office and, subsequently, the Michigan Attorney General, accusing Punturo of violating Michigan's Antitrust Reform Act. In 2016, the Michigan Attorney General and

the Michigan State Police raided ParkShore's offices and seized the hard drive from Punturo's computer. Eventually, the Michigan Attorney General filed a criminal case against Punturo charging him with extortion, instead of antitrust violations. In addition, earlier in 2016, Kern, representing Boyer, sued Punturo and ParkShore in state court alleging antitrust violations and other claims and seeking $781,500 in damages plus attorney's fees. The state court dismissed Boyer's civil suit against Punturo without Punturo or ParkShore filing a responsive pleading. (*Id.* at PageID.13.) The Grand Traverse County District Court ultimately dismissed the criminal extortion case against Punturo following the preliminary examination. (*Id.* at PageID.14.)

While the criminal extortion case and Boyer's civil antitrust case against Punturo were pending, Kern and the Boyers made numerous statements to the media regarding both cases, some of which expressly accused Punturo of violating state anti-trust laws by engaging in unfair competition and extortion. (*Id.* at PageID.14–17.) In February 2017, the Punturos' counsel sent Kern and Boyer demands for retraction, but Kern and Boyer failed to retract their statements. (*Id.* at PageID.22.)

**B.    The Allstate Policy**

Allstate issued a Business Owners Policy, No. 648239769, to Bek Law, PLC. Kern, as an employee of Bek Law, is an insured under the Policy. After receipt of the Punturos' complaint in the underlying litigation, Kern tendered the defense to Allstate and his errors and omissions insurance carrier. The Punturos' claims in the underlying litigation fall within the Policy's coverage period. Allstate agreed to defend Kern and Bek Law, PLC, subject to a reservation of rights. (ECF No. 1 at PageID.3.)

## II. MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts

which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. DISCUSSION

The issue presented by the instant motion is whether the Policy provides coverage for the Punturos' claims in the underlying litigation. Because the instant case is a diversity action, the court must apply the substantive law of the forum state, including the law governing interpretation and enforcement of insurance policies. *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 916 F. Supp. 2d 813, 821 (W.D. Mich. 2013); *see also Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("We generally apply the substantive law of the forum state to actions brought pursuant to our diversity jurisdiction."). No party contends that the Court should apply the law of a state other than Michigan in deciding Allstate's motion.

Michigan law construes insurance contracts generally in the same manner as other contracts. *Farmers Ins. Exch. v. Kurzmann*, 257 Mich. App. 412, 417, 668 N.W.2d 199, 203 (2003). An insurance policy must be read as a whole in order to discern and effectuate the parties' intent. *Id.* at 418, 668 N.W.2d at 203. Courts must accord the terms of a policy their plain and ordinary meaning. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431, 433-34 (1992). "Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in

contravention of public policy." *Raska v. Farm Bureau Ins. Co.*, 412 Mich. 355, 361-62, 314 N.W.2d 440, 440 (1982). An insurance policy is deemed ambiguous when its provisions are capable of two or more interpretations that conflict. *Fromm v. Meemic Ins. Co.*, 264 Mich. App. 302, 311, 690 N.W.2d 528, 533 (2004). Ambiguous insurance policies and exclusions are construed against the insurer. *See Bruce v. Cuna Mut. Ins. Soc'y*, 219 Mich. App. 57, 60, 555 N.W.2d 718, 720 (1996). However, a clear and specific exclusion must be given effect, because an insurance company cannot be held liable for risks it did not agree to assume. *South Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich. App. 635, 653, 572 N.W.2d 686, 695 (1997).

Divining whether an insurance policy provides coverage entails a two-step process. First, a court must determine if the insurance policy provides coverage to the insured. *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 172, 534 N.W.2d 502, 510 (1995). If so, the court must determine whether an exclusion negates the coverage. *Id.* The insured bears the burden of establishing that the claim falls within the terms of the policy. *Id.* However, the insurer must prove that an exclusion precludes coverage. *Id.* at 161 n.6, 534 N.W.2d at 505 n.6.

In this case, coverage under the Policy for business liability is addressed in Section II – Liability, which provides, in pertinent part:

> **A.    Coverages**
>
> **1. Business Liability**
> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. . . .

(ECF No. 1-2 at PageID.128.)

In their complaint, the Punturos allege that they were injured by Kern's statements. As such, the only possible coverage the Policy could provide Kern is for "personal and advertising injury," as there is no reasonable basis to conclude that the Punturos' claims allege "bodily injury" or "property damage."[2] At a minimum, the defamation and false light invasion of privacy claims are the types of offenses that come within the Policy's "personal and advertising injury" coverage. (*Id.* at PageID.142.) While, at first look, it would appear that the Policy covers at least two of the Punturos' substantive claims in the underlying litigation, the Policy contains an endorsement titled, "Exclusion – Personal and Advertising Injury," and bearing form number BP 04 37 07 02. (*Id.* at PageID.148.) Endorsement BP 04 37 07 02 states that it modifies insurance provided under "BUSINESSOWNERS COVERAGE FORM" as follows:

> The following is added to Section II – Liability and supersedes any provision to the contrary:
>
> The insurance provided under Paragraph **A. Coverages** does not apply to "personal and advertising injury."

(*Id.*) Thus, while the Policy provides "personal and advertising injury" coverage, Endorsement BP 04370702 excises such coverage from the Policy. "When a conflict arises between the terms of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail." *Besic v. Citizens Ins. Co. of the Midwest*, 290 Mich. App. 19, 26, 800 N.W.2d 93, 97 (2010). In short, the Policy provides no coverage for "personal and advertising injury."

Neither Kern nor the Punturos addresses the effect of Endorsement BP 04370702 on "personal and advertising injury" coverage under the Policy. In fact, they fail to acknowledge it in

---

[2]The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at PageID.140.) The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured." (*Id.* at PageID.143.)

their responses. Instead, they focus on the Policy exclusions—particularly those for "personal and advertising injury"—cited by Allstate, arguing that the exclusions do not apply. But addressing exclusions without first establishing coverage puts the cart before the horse. Because Endorsement BP 04 37 07 02 unambiguously excises "personal and advertising injury" from the Policy, the exclusions to that coverage become irrelevant because there is nothing to exclude. Thus, the Court need not venture into the thicket of the "personal and advertising injury" exclusions that Allstate cites.

Notwithstanding its conclusion of no coverage under the Policy, the Court finds it appropriate to address the Policy's professional services exclusion because, even if the Policy provided coverage for "personal and advertising injury," the professional services exclusion would exclude coverage for every possible type of injury to the Punturos covered under the Policy. Although Allstate did not cite the professional services exclusion in its complaint and raised it for the first time in its motion for summary judgment, Federal Rule of Civil Procedure 15(b) allows the Court to consider the exclusion because neither Kern nor the Punturos objected to Allstate raising the argument in its summary judgment motion or argued that they were prejudiced by such action. *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992) (concluding that Rule 15(b) authorized the district court to consider a defense that the defendant raised for the first time in its motion for partial summary judgment because, although the plaintiff objected to the defendant's use of the defense, the plaintiff fully responded to the merits of the defense and failed to demonstrate prejudice).

The professional services exclusion excludes the following:

> "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes, but is not limited to:

7

>    (1) Legal . . . services;
>
>    . . . .
>
>    This exclusion applies even if . . . the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

(*Id.* at PageID.133–34.)

Michigan courts define "'professional services' as those involving specialized skill of a predominantly intellectual nature." *Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co.*, 676 F. App'x 515, 520 (6th Cir. 2017) (footnote omitted). In *St. Paul Fire & Marine Insurance Co. v. Quintana*, 165 Mich. App. 719, 419 N.W.2d 60 (1988), the court stated that a professional service "is something more than an act flowing from mere employment or vocation . . . [but instead] must be such as exacts the use or application of special learning or attainments of some kind." *Id.* at 723, 419 N.W.2d at 62 (internal quotations omitted) (quoting *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 796, 683 P.2d 440, 444 (1984)). Michigan courts "generally interpret[] professional services exclusions broadly." *Orchard, Hiltz & McCliment, Inc.*, 676 F. App'x at 521 (citing *Am. Fellowship Mut. Ins. Co. v. Ins. Co. of N. Am.*, 90 Mich. App. 633, 282 N.W.2d 425, 428 (1979)).

The relevant inquiry in applying the professional services exclusion is "whether the injury resulted from rendering or failing to render a professional service." *Shuler v. Mich. Physicians Mut. Liab. Co.*, 260 Mich. App. 492, 527, 679 N.W.2d 106, 126 (2004). In this case, in making the statements that are the subject of the Punturos' complaint, Kern was providing professional services—he was acting as the Boyers' attorney and making statements on their behalf in relation to pending litigation. Neither Kern nor the Punturos dispute this. They argue, however, that the professional services exclusion is a malpractice exclusion and, as such, does not apply because Kern never represented the Punturos. In particular, Kern notes that "[i]n the setting of a commercial

general liability policy issued to a law firm, the exclusion is meant to clarify that general liability insurance is not professional liability insurance." (ECF No. 31 at PageID.319.) That may be so, but nothing in the plain language of the exclusion limits its application to claims by persons to whom the insured owed a duty. Rather, the appropriate inquiry is whether the rendering of a professional service caused the injury. *See Erie Ins. Grp. v. Alliance Envtl., Inc.*, 921 F. Supp. 537, 542 (S.D. Ind. 1996) (rejecting the insured's arguments that the professional services exclusion applied "only to claims based on alleged breaches of specific duties imposed by law only upon someone acting as a professional," and noting that the "exclusion is framed in terms of the services or activities that give rise to the liability, not in terms of the legal theory articulated by the plaintiff").

Kern argues that adopting Allstate's interpretation of the professional services exclusion would render the liability coverage under the Policy illusory if the insured, like Kern, is in the business of rendering legal services. The court in *Orchard, Hiltz & McCliment*, *supra*, rejected a similar argument, noting that coverage would be triggered where the insured's employees could be held liable based on "ordinary negligence in performing some task that falls *outside* the provision of professional services." 676 F. App'x at 523 (emphasis in original). As the Third Circuit explained in *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d 979 (3d Cir. 1988):

> The professional aspect of a law practice obviously involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standards [sic]. The commercial aspect involves the setting up and running of a business, i.e., securing office space, hiring staff, paying bills and collecting on accounts receivable, etc., in which capacity the attorney acting as a businessperson is held to the same reasonable person standard as any other. Indeed the professional services and the business distinction drawn by the two policies and Harad's recognition of the limitations inherent in each is manifested by the fact that Harad purchased a separate liability policy from Home.
>
> Given the dual nature of the practice of law, an attorney's liability for an action should be assessed depending on the particular role he was performing at the time the alleged liability arose. For example, if an attorney, while hosting a real estate closing in his office, places his briefcase on the floor and a colleague trips on

> it, is injured and sues him, the lawyer's liability would derive not from the rendering of a professional service, but rather from his operation of a business. Conversely, since Harad's conduct in this case was not related to his operation of a business, but was derived solely from his providing legal services to a client, his liability is professional in nature.

*Id.* at 985. Thus, as noted in *Harad*, not all of Kern's activities as an attorney/business owner would be excluded from coverage under the Policy.

Because no genuine issue of material fact remains, Allstate is entitled to summary judgment and an appropriate declaration of noncoverage.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Allstate's motion for summary judgment and issue an appropriate declaratory judgment finding no coverage under the Policy for the Punturos' claims in the underlying litigation.

An Order consistent with this Opinion will enter.

Dated: August 9, 2019              /s/ Gordon J. Quist
                                   GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE